THE PEOPLE OF THE STATE OF NEW YORK ex rel. MARTIN A. WALSH, Relator, *v.* HAROLD TELLER, Defendant.

Supreme Court, Special Term, Queens County, September 15, 1938.

*John J. Bennett, Jr., Attorney-General [Benjamin Barondess, Special Deputy Assistant Attorney-General,* of counsel], for the relator.

*Edward E. Edstrom* for the defendant.

FROESSEL, J. The relator demands judgment upon his alleged right, and the alleged right of .the defendant Teller, to the office of trustee of the village of Island Park. Briefly, the facts as alleged in the complaint so far as material here are as follows:

In 1937 one Swanson and one Emerson were elected as trustees for a two-year period, commencing in April of that year. In 1938 one Kraft and one Swift were elected trustees, likewise for a two-year period. At the same annual election, Trustee Emerson was elected mayor, and thereupon resigned as trustee, thus leaving but three trustees and the mayor. At the adjourned annual meeting of the board of trustees of the village, held on April 11, 1938, they sought to elect a successor trustee to Mayor Emerson. Trustees Kraft and Swift nominated the relator. Trustee Swanson and Mayor Emerson nominated the defendant Teller. They all voted accordingly. There being a tie, the mayor claimed the right to vote again to break the tie; he thereupon cast his second vote for Teller, and declared Teller elected. According to defendant's contention, this is in accordance with the law.

Upon the foregoing facts, relator claims that he was duly elected by the two votes of Kraft and Swift, and urges, in the first place, that Swanson had no right to vote because of a property disqualification, as provided in section 42 of the Village Law. As this is denied in the amended answer, it of course raises a question of fact. The relator further contends that even assuming that Swanson had the right to vote, the mayor could only vote in case of a tie, and, there being no tie before he first voted, he had no power to vote at all. Under these circumstances, the relator having received two votes, and the defendant at most one, the relator contends he was duly elected.

Thus the question then presented is as to the voting powers of the mayor. Section 88 of the Village Law provides in part: " The mayor of the village shall preside at the meetings of the board of trustees, and *may have a vote upon all matters and questions coming before the board, and he shall vote in case of a tie.*" ˙ (All italics mine.)

It may be well briefly to review historically this provision of the Village Law. The Constitution of 1846 (Art. 8, § 9) required the Legislature " to provide for the organization of cities and incor-

porated villages." The first general Village Law in this State is found in chapter 426 of the Laws of 1847. Under subdivision 1 of section 57 of that chapter it is provided that the trustees shall appoint from their number a president of the village. The president then had a vote *as a trustee.* He was given no specific right to vote *as president.* Relator's counsel concedes that under the law, as it then stood, the president could vote first as a trustee, and that he also had " a casting vote (that is, a vote whereby he can break a tie), which comes to him from the fact that he holds the additional office of chairman or presiding officer of the body." Counsel then cites *People ex rel. Remington* v. *Rector* (48 Barb. 603, 605), which approved the double voting by the presiding officer, as was done in this case. By chapter 291 of the Laws of 1870 there was a revision of the Village Law. Under this revision, the president was no longer a trustee. He was, therefore, given a specific right to vote by title 3, section 2, which provided in part as follows: " The president, when present, shall preside at meetings of the board *and have a vote on all questions."* By the next revision of the Village Law, namely, chapter 414 of the Laws of 1897, section 87 thereof provided: " The president of the village shall preside at the meetings of the board of trustees, *and shall have a vote upon all matters and questions coming before the board."*

Thus, during all of this time, the president always had a right to vote, either by virtue of being a trustee, or as president by express authority under the statute.

The last general revision of the Village Law took place in 1927, and is found in chapter 650 of the Laws of that year. The first sentence of section 87 of that chapter provides: " The mayor and the trustees of a village *shall constitute the board of trustees thereof."*

Here the mayor is expressly made a member of the board, and it would seem to follow that, as such member, he would have a right to vote, for he is an elective officer, precisely as a trustee (Village Law, § 43), and section 61 provides that vacancies, as in the instant case, " shall be filled by the *board* of trustees." The last sentence of section 50 provides likewise. By section 88 of the Village Law, from which I will quote presently, the mayor is made the presiding officer of the board, and, under the reasoning of relator's counsel as conceded with respect to the Laws of 1847, it would follow that he would then also have a casting vote in case of a tie. Quoting from his brief on the authority of *State ex rel. Markham* v. *Simpson* (175 N. C. 135; 95 S. E. 106), " that is an implied right of all presiding officers and is inherent in the office, because ' some such provision must be implied as an essential of efficient government.' "

But the Legislature in its last revision did not leave this power of the mayor to vote resting upon principles of common or parliamentary law; it made express provision with reference thereto, which seems to remove all doubt. I quote from section 88 of the present Village Law: " The mayor of the village shall preside at the meetings of the board of trustees, and may have a vote upon all matters and questions coming before the board *and* he shall vote in case of a tie."

While neither counsel nor the court has found any decision construing this provision, the meaning seems to be quite clear. Here we find a gradual increase of power in the president or mayor of a village. At first (1847) he had no express voting power, save as a trustee. In 1870 the president was given a " vote on all questions," and in 1897 " a vote upon all matters and questions coming before the board." Now, in 1927, this power is continued, to which is added, " and he shall vote in case of a tie." Thus he " may have a vote upon all matters and questions coming before the board " (this by virtue of the fact that he is a member of the board [§ 87] and it is the board which fills vacancies [§§ 50, 61]). And the statute continues: " *and* he shall vote in case of a tie " (this, by virtue of being the presiding officer). In other words, it gives him a permissive vote which he may exercise as a member of the board, and a compulsory vote in case of a tie as a presiding officer. This seems to be the only reasonable construction to be placed upon the statute, and coincides with plaintiff's concession as to the state of the law under the first general Village Law of 1847, and with the holding in *People ex rel. Remington* v. *Rector* (*supra*).

While this particular statute does not seem to have been construed in this State, the construction I place upon it seems to have ample judicial support. In 2 McQuillin on Municipal Corporations ([2d ed.] § 620) the author states: " Where the presiding officer or mayor is a member of the council or governing body, unless expressly forbidden by law, it is generally held that he may not only vote on all questions as a constituent member, but where the charter gives him a casting vote in event of a tie he may vote the second time." To the same effect is 2 Dillon on Municipal Corporations ([5th ed.] § 511). Both of these authors cite *People ex rel. Remington* v. *Rector* (*supra*) in support of this proposition. In that case Judge GILBERT held: " It appears from the evidence that the chairman voted with his colleagues, and that the votes were equal. He must be deemed also to have given the casting vote." There are many authorities in other jurisdictions upholding the right of one who is a member of the body, with a regular vote in it, to

cast the deciding ballot in case of a tie. In *State ex rel. Markham* v. *Simpson* (*supra*), cited by relator's counsel, wherein it appeared that the presiding officer of the city council, who was a regular member of it, was given by statute the right to cast the deciding vote in case of a tie, the court said: " It is the prevailing rule in this country that, in the case of these municipal boards, a presiding officer who is also a member has the legal right, as such member, to vote on questions coming properly before the body for decision and to vote a second time as presiding officer when the law or valid rule of the body itself, governing its proceedings, confers upon such officer the right to give the casting vote." The courts of Michigan, Tennessee and Colorado have held likewise. (40 A. L. R. 810.)

Such cases as *People ex rel. Argus Co.* v. *Bresler* (70 App. Div. 294; affd., 171 N. Y. 302), cited by relator, do not militate against this holding. On the contrary, they depend upon statutes imposing restrictions, express or implied, wholly different from that found in the instant case, and merely illustrate the distinction, as Judge KELLOGG did in the *Argus Co.* case: " If the Legislature had intended to give to the president a right to vote on this question it would have included it in the provision (§ 14) conferring a power to vote in case of a tie." That is precisely what the Legislature did in section 88 of the Village Law, namely, gave the power to " vote upon all matters and questions coming before the board " *and* with it included the additional power that " he shall vote in case of a tie." In the *Argus Co.* case his power to vote was limited to the case of a tie vote upon all resolutions and ordinances, and of course, having been so restricted, he could not vote otherwise.

To construe section 88 as relator's counsel does, namely, that the mayor may only vote in case of a tie, would require that the words " and may have a vote upon all matters and questions coming before the board " be totally disregarded. There is no justification whatsoever for such construction.

Long ago, Lord Coke gave us the principle of statutory construction applicable here, in this language: " The good expositor makes every sentence have its operation to suppress all the mischiefs; he gives effect to every word of the statute; he does not construe it so that anything should be vain and superfluous nor yet make exposition against express words, but so expounds it that one part may stand agreeable with the other and all may stand together." (Coke's Rep. part VIII, p. 310.) Language in statutes must be given meaning. Courts have no authority to rewrite statutes; they must take the laws as they are written. Here the language, its history and purpose are reasonably clear. The president or

mayor of a village now has, and always did have, a vote on the board of trustees. If he had no more, a deadlock would have been created in the instant case, and public business would become imperilled. To grant the mayor, elected by the voters of the village, the right to break this deadlock is not only reasonable, but wise. If the Legislature intended to grant that power *only*, it would have said so. Having prescribed that the mayor " may have a vote upon all matters and questions coming before the board," *and* in addition thereto that " he shall vote in case of a tie," I hold that in the instant case, the mayor had the right to vote as he did, assuming that Swanson had the right to vote.

Under the circumstances in this case, if it should be found that Swanson was disqualified, then the mayor would have but one vote and Walsh would have been elected by a vote of two to one, unless, of course, he were ineligible. If, however, the vote of Trustee Swanson is good, then Teller was elected to office. But whether the Swanson vote was good or not, is a question of fact to be determined by trial.

By reason of the presence of an issue of fact in this case, it cannot be disposed of by motion, and accordingly the motion is denied.